UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

| | |
|---|---|
| JULIETTE D. STOTLER,　Plaintiff,　v.　MICHEL LAW, LLC d/b/a LEVEL ONE LAW,　Defendant. | CIVIL COMPLAINT　CASE NO. 2:25-cv-01092　DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes JULIETTE D. STOTLER ("Plaintiff"), by and through the undersigned, complains as to the conduct of MICHEL LAW, LLC d/b/a LEVEL ONE LAW ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Florida Credit Services Organizations Act ("FCSOA") under Fla. Stat. § 817.700 *et seq.*, the Florida Credit Counseling Services Act ("FCCSA") under Fla. Stat. § 817.801 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Fla. Stat. § 501.201 *et seq.*, as well as claims of Negligence and Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692, as well as 28 U.S.C. §§ 1331 and 1337, as the

action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Middle District of Florida and a substantial portion of the events or omission giving rise to the claims occurred within the Middle District of Florida.

### PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Port Charlotte, Florida.

5. Defendant is a credit repair organization and debt management provider that claims to assist consumers with becoming debt free and improving their overall financial health, including their credit scores. Defendant is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 7901 4th Street North, Suite 300, St. Petersburg, FL 33702.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

7. In approximately November of 2022, Plaintiff was looking into various debt consolidation options, at which point Plaintiff began receiving solicitation calls and emails from "Strategic Consulting" regarding purported debt consolidation loans that were available to consumers.

8. Upon information and belief, "Strategic Consulting" was an assumed or trade name being utilized by an entity associated with or under the corporate control of StratFS, LLC ("StratFS") or its parent company, Strategic Family, Inc. ("SFI") (collectively "Strategic").

9. Upon further information and belief, StratFS and/or SFI have been engaged in a years-long deceptive and misleading campaign of selling unlawful debt relief services to consumers across the country, with such unlawful practices including the utilization of "façade" law firms, including Defendant, in the perpetuation of the scheme.

10. Defendant and Strategic's conduct is currently the subject of an action by the Consumer Financial Protection Bureau. *See CFPB et al. v. StratFS, LLC et al.,* 1:24-cv-00040-EAW-MJR (W.D.N.Y.).

11. On or around November of 2022, Plaintiff received solicitations and ultimately spoke with a representative associated with Defendant and/or Strategic.

12. Through such conversations and solicitations, Plaintiff was led to believe that she was approved for a debt consolidation loan which, given the nature of her financial position and credit problems, was an elusive prospect.

13. Defendant and its agents then convinced Plaintiff to sit for an in-person presentation.

14. This representative further suggested that the services at issue would go about improving Plaintiff's credit scores.

15. Plaintiff then agreed to meet with a representative of Defendant's in-person to further discuss the program and loan.

16. During such presentation, Defendant explained the nature of its services and that Plaintiff would make monthly payments to Defendant, with which Defendant would attempt to resolve the various debts Plaintiff would enroll in the program for substantially less than the balance owed.

17. Defendant further represented that it would get to work promptly and prevent Plaintiff's creditors from contacting Plaintiff.

18. Additionally, Defendant represented, both explicitly and by implication, that ultimately Defendant's services would have a positive impact on her credit score as Plaintiff would be able to resolve obligations faster than if she were to do things on her own, and that its services would reestablish Plaintiff's credit and provide her a fresh financial start.

19. Defendant further repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

20. Although Plaintiff was led to believe that she would be receiving a consolidation loan, rather than the debt settlement services she was actually being sold, the in-person and intensive nature of the presentation, in conjunction with the nature of the representations made regarding the services, ultimately led Plaintiff to agree to use Defendant's services.

21. Plaintiff then entered into a contract for the provision of such services, enrolling a number of obligations in Defendant's program.

22. Plaintiff began making monthly payments to Defendant which totaled approximately $900 per month.

23. Upon information and belief, Defendant withdrew funds from Plaintiff's monthly payments prior to providing any services to Plaintiff and/or before completely performing the services Defendant agreed to perform for Plaintiff.

24. For example, Plaintiff was charged an upfront "retainer" fee, totaling $995, which came from Plaintiff's first 9 months' payments.

25. Throughout the life of the parties' dealings, Plaintiff was subjected to a $89 "legal administration" fee, charged at a flat rate each month throughout the life of the program, regardless of whether any obligations had been resolved.

4

26. Furthermore, Plaintiff's monthly payments would go towards a "service cost," comprising 19% of the balance of Plaintiff's enrolled debts, charged each month over the course of the parties' dealings regardless of whether any debts had actually been settled.

27. Defendant failed to meaningfully disclose or discuss the nature of its fee structure and how it was paid for services, instead suggesting to Plaintiff that it did not get paid until debts were resolved.

28. Defendant's conduct in improperly charging Plaintiff for services before such services were performed or any settlements reached diverted funds from Plaintiff's dedicated account that could and should have gone towards Defendant negotiating Plaintiff's obligations.

29. Defendant further unfairly and deceptively ensured it received compensation, regardless of whether any actual services had been performed justifying its retention of Plaintiff's payments.

30. Upon information and belief, Defendant diverts its customers' funds in this manner so as to intentionally decrease the pool of available money from which Defendant can reach settlements, thus increasing the length of time it takes consumers to pay down their enrolled debts, in turn allowing Defendant to continue to charge unlawful and inappropriate fees for longer than necessary to deliver the represented results.

31. After signing up with Defendant, Plaintiff was told by that, rather than paying her creditors or keeping up with payments, she should instead divert those funds to Defendant who would use the funds to enter into negotiations with Plaintiff's creditors.

32. Plaintiff believed Defendant's provision of advice was in her best interest; however, Plaintiff subsequently suffered a diminishment to her credit score as she began defaulting on enrolled obligations.

33. Defendant failed to clearly inform Plaintiff of this information prior to Plaintiff signing up with Defendant, further explicitly suggesting that Plaintiff's credit would be improved once settlements were reached.

34. Plaintiff maintained her payments to Defendant for over two years.

35. Despite Plaintiff's maintenance of payments, Defendant failed to perform the services it represented would be performed in the manner such services were represented.

36. Although Plaintiff made over tens of thousands in dollars in payments, Defendant only resolved a small fraction of Plaintiff's enrolled obligations, despite Plaintiff having made more than sufficient payments from which further settlements could and should have been reached.

37. Rather than resolve Plaintiff's debts as it was hired to do, Defendant simply retained Plaintiff's monthly payments without performing any work that would justify the retention of such payments.

38. Defendant further failed to deliver the represented improvement to Plaintiff's credit that was represented as coming about once settlements were reached and payments made.

39. On the small portion of debts Defendant was ultimately able to settle for Plaintiff, it persistently failed to deliver the represented savings, ultimately costing Plaintiff more to resolve certain debts than the balance of such debts at the time she enrolled with Defendant.

40. Furthermore, and upon information and belief, none of the services purportedly provided to Plaintiff were provided by any attorneys, or under the meaningful oversight of any attorneys, and were instead being provided by non-attorney third parties.

41. Ultimately, Plaintiff paid Defendant thousands of dollars in exchange for misrepresented and deficient services that, rather than deliver any relief to Plaintiff, instead caused nothing but additional and substantial harm to Plaintiff's already vulnerable and sensitive financial position.

42. Due to the unlawful and deceptive nature of Defendant's conduct, and the CFPB action to which it has been subjected, on or around December 2024, Defendant cancelled the services being provided to Plaintiff.

43. Despite Plaintiff's program having been cancelled, Defendant failed to refund Plaintiff for payments made in connection with services Defendant ultimately failed to perform or completely perform for Plaintiff.

44. At the time Defendant cancelled, and despite the tens of thousands of dollars in payments made, Defendant had only resolved two of Plaintiff's enrolled obligations.

45. Between Defendant's fees and the deficient settlements it actually managed to deliver for Plaintiff, Plaintiff ended up paying more than the balances of resolved debts, and was further left dealing with the fallout and significantly diminished financial position stemming from Defendant's unlawful and deficient services.

46. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

47. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses dealing with the fallout of Defendant's conduct, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management providers.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

48. Plaintiff repeats and realleges paragraphs 1 through 45 as though fully set forth herein.

49. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

50. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

51. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history and help reestablish Plaintiff's credit, at it would allow her to resolve obligations which otherwise would go unresolved.

    a. **Violations of CROA §§ 1679b(a)(3)-(4)**

52. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

53. Defendant violated the above provisions of the CROA through its generally deceptive representations regarding the nature of the services it would provide Plaintiff. Defendant and its agents represented to Plaintiff that, as payments were made and settlements were reached, Plaintiff would ultimately enjoy an improvement to her credit score. However, Plaintiff did not experience this benefit upon Defendant reaching settlements on Plaintiff's behalf. Defendant made its representations so as to overcome any potential objections that would otherwise be associated with

a truthful representation regarding the likely impact its services would actually have on Plaintiff's financial well-being.

54. Defendant further violated the above provisions of the CROA through the deceptive and misleading bait-and-switch utilized to get Plaintiff to speak with Defendant about its services. Defendant and its agents repeatedly represented and suggested to Plaintiff that she was being sold, and had been approved for, a debt consolidation loan that would ultimately save her money and negate the application of interest on her debts. Under that guise, Plaintiff agreed to meet with Defendant's representative in-person. With the bait set, Defendant then effectuated its switch through the pressure intensive in-person presentation regarding the debt settlement services which were ultimately sold to Plaintiff. Defendant seeks to exploit consumers' desperation for financing as a means to get consumers to ultimately agree to misrepresented and unlawful services.

55. Defendant further violated the above provisions of the CROA through the deceptive and misleading manner in which it charges consumers fees in a manner designed to increase the number and amount of payments consumers make to Defendant for its services. Defendant's charging of premature and unlawful fees depletes the pot from which further settlements can be made, in turn increasing the length of time consumers are subject to Defendant's program and thus subject to further charges.

56. Further, Defendant violated the CROA through its deceptive and misleading instruction that Plaintiff's best course of action would be to cease paying her creditors and instead divert those funds to Defendant. Defendant failed to properly disclose the impact this course would have as it was represented to Plaintiff that, ultimately, Defendant's program would improve her credit. However, its services had the exact opposite effect. Upon information and belief, Defendant has

determined that, if it was honest about the true impact of its services, consumers would be reluctant and less likely to sign up for Defendant's services.

57. Defendant further violated the above provisions of the CROA through its fraudulent conduct in making certain representations designed to induce consumer participation in its program, only to cut against those representations in the contracts it enters into with consumers. Defendant engages in this deceptive and misleading conduct in order to get consumers on the hook, only to feebly attempt to justify its failures and conduct through contractual language that runs contrary to its representations made to consumers. That Defendant's contracts with consumers contains a merger and integration clause seeking to remove its representations from the nature of the parties' relationship only further illustrates the fraudulent and deceptive nature of its conduct.

58. Additionally, Defendant violated the above provisions of the CROA through the deceptive and misleading representations regarding the extent of attorney involvement in the services at issue. Defendant and its agents represented and led Plaintiff to believe that the services at issue were going to be provided by attorneys or, at the very least, under the supervision of attorneys. However, upon information and belief, no attorneys provided any services to Plaintiff, and any services actually provided to Plaintiff were not performed under any sort of meaningful attorney review or involvement. Defendant and its partners seek to use Defendant's purported status as a law firm to otherwise lend a sense of legitimacy and credence to the services at issue, despite their inherently fraudulent and unlawful nature.

59. Defendant further violated the above provisions of the CROA through its failure to deliver represented savings on enrolled debts. Defendant represented to Plaintiff that its services would save money on enrolled obligations, when in fact Defendant's services caused Plaintiff to pay more than the original balance of enrolled debts. Defendant's conduct is further indicative of the

deceptive and misleading estimates it provides to consumers regarding the overall cost of its services and savings it can reasonably deliver.

### b. Violations of CROA § 1679b(b)

60. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

61. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant charged Plaintiff various monthly flat fees before fully completing any of the services it agreed to perform for Plaintiff.

### c. Violations of 15 U.S.C. § 1679c

62. The CROA, pursuant to 15 U.S.C. § 1679c, outlines a number of disclosures that credit repair organizations must provide to consumers prior to contracting with consumers for the provision of services.

63. Defendant violated the above provision of the CROA through its failure to provide Plaintiff the disclosures it was required to provide to Plaintiff.

### d. Violation of CROA § 1679f(b)

64. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

65. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contract contains a number of provisions which attempt to broadly shield itself from liability against protections afforded under CROA.

Defendant's contract further seeks to apportion costs and fees amongst litigants in a manner contrary to the protections provided by the CROA. Furthermore, Defendant's contract contains a merger and integration clause which constitute an attempt by Defendant to insulate itself from liability in connection with the manner in which it represented its services to Plaintiff prior to Plaintiff signing up with Defendant.

66. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

67. Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

68. Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

69. Defendant is a "credit service organization" as defined by Fla. Stat. § 817.7001(2)(a)..

  a. **Violation of FCSOA § 817.7005**

70. The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of prohibited conduct for credit services organizations.

71. Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must not charge or receive any money or other consideration prior to full and complete performance of its services, unless it has maintained a surety bond with the state, in which case the sums paid must be retained until full performance of the services are rendered.

72. Defendant violated Fla. Stat. § 817.7005(1) through its charging Plaintiff prior to full and complete performance of its services.

73. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot "[m]ake or use any false or misleading representations or omit any material fact in the offer or sale of the services of a credit service organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit service organization, notwithstanding the absence of reliance by the buyer."

74. As outlined above, Defendant violated the above referenced provision of the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

   b. **Violations of FCSOA § 817.702**

75. The FCSOA, pursuant to Fla. Stat. § 817.702, requires credit services organization to provide consumers a number of disclosures, outlined in Fla. Stat. § 817.703.

76. Defendant violated § 817.702 by failing to provide the disclosures required under Florida law.

   c. **Violations of FCSOA § 817.705**

77. The FCSOA, pursuant to Fla. Stat. § 817.705(1), provides that "[a]ny attempt by a credit service organization to have a buyer waive rights given by this part is a violation of this part."

78. Defendant violated the above provision of the FCSOA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

   c. Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

   d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

   e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FLORIDA CREDIT COUNSELING SERVICES ACT

79. Plaintiff restates and realleges paragraphs 1 through 76 as though fully set forth herein.

80. Plaintiff is a "person" as defined by Fla. Stat. § 817.801(5).

81. Defendant is a "credit counseling agency" as defined by Fla. Stat. § 817.801(1).

82. The exemption for attorneys licensed in the state of Florida does not apply to Defendant as Defendant was not engaged in the practice of law in the state of Florida in connection with the services provided to Plaintiff.

   a. **Violation of FCCSA § 817.802**

83. The FCCSA, pursuant to Fla. Stat. § 817.802, governs the fees that can properly be charged by a credit counseling agency.

84. Defendant violated § 817.802 through the unlawful and exorbitant nature of its assessed fees. Defendant charges far more for its services that permitted under Florida law.

      b. **Violations of FCCSA § 817.805**

85. The FCCSA, pursuant to Fla. Stat. § 817.805, provides that "[a]ny person engaged in debt management or credit counseling services shall disburse to the appropriate creditors all funds received from a debtor, less any fees permitted . . . within 30 days after receipt of such funds."

86. Defendant violated § 817.805 by routinely taking Plaintiff's payments and failing to disburse those payments to her creditors within 30 days of receiving the funds from Plaintiff. Plaintiff made payments for months, yet Defendant did nothing with the funds except collect its exorbitant and unlawful fees without entering into any negotiations with Plaintiff's creditors.

87. Pursuant to Fla. Stat. § 817.806(1), "[a]ny person who violates any provision of [the FCCSA] commits an unfair or deceptive trade practice as defined by [Fla. Stat. § 501.201 *et seq.*]. Violators shall be subject to the penalties and remedies provided therein. Further, any consumer injured by a violation of this part may bring an action for recovery of damages. Judgment shall be entered for actual damages, but in no case less than the amount paid by the consumer to the credit counseling agency, plus reasonable attorney's fees and costs."

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Award Plaintiff actual damages in an amount to be determined at trial pursuant to Fla. Stat. §§ 501.211(2) & 817.806;

c. Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

    d.  Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

    e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. §§ 501.2105 & 817.806(1); and,

    f.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATIONS OF THE FDUTPA

88. Plaintiff restates and realleges paragraphs 1 through 85 as though fully set forth herein.

89. The transactions giving rise to these claims constitute "trade or commerce" as defined by Fla. Stat. § 501.203(8).

90. Pursuant to the FDUTPA § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

91. The provisions of the FDUTPA "shall be construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

92. Violations of the FDUTPA further consider the rules promulgated in connection with the Federal Trade Commission Act, the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts, as well as any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. *See* Fla. Stat. § 501.203.

93. Defendant violated § 501.204(1) through the unfair and deceptive nature of the conduct directed towards Plaintiff, discussed at length above.

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff his actual damages in an amount to be determined at trial pursuant to the Fla. Stat. § 501.211(2);

c. Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

d. Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

e. Award Plaintiff costs and reasonable attorneys' fees pursuant to Fla. Stat. §501.2105; and,

f. Award any other relief this Honorable Court deems equitable and just.

### COUNT V – NEGLIGENCE

94. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

95. The elements of a negligence cause of action are: (1) existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach.

96. Defendant owed Plaintiff a duty of care to provide its represented legal and financial services in a competent manner. Defendant represented to Plaintiff that it would provide her certain services in association with the services it was agreeing to perform. In so doing, Defendant assumed an extra-contractual duty of care which it owed to Plaintiff to perform such services. Defendant breached that duty of care through the negligent advice it provided Plaintiff regarding the best way to handle her obligations. It was negligent for Defendant to tell Plaintiff to cease paying her creditors given the extent to which this advice adversely impacted and harmed Plaintiff.

17

Defendant repeatedly breached its duty to act in Plaintiff's interest, instead bilking Plaintiffs out of thousands of dollars in payments for its own benefit.

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff their actual damages in an amount to be determined at trial;

c. Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d. Award Plaintiff costs and reasonable attorneys' fees; and,

## COUNT VI – BREACH OF FIDUCIARY DUTY

97. Plaintiff restates and realleges paragraphs 1 through 94 as though fully set forth herein.

98. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide legal services to Plaintiff, inherently rendering it her fiduciary with regards to the services it was agreeing to perform.

99. Defendant breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided. Despite purporting to have Plaintiffs' best interest in mind, Defendant caused Plaintiffs significant hardship through its provision of objectively and unreasonably misguided advice and unlawful charging for services. Defendant completely disregarded the fiduciary duties it owed Plaintiff, and Defendant's breach of such duties caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, JULIETTE D. STOTLER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

    c.  Award Plaintiff punitive damages;

    d.  Award Plaintiff reasonable attorney's fees and costs;

    e.  Enjoining Defendant from continuing its unlawful conduct; and,

    f.  Awarding any other relief as this Honorable Court deems just and appropriate

Dated: November 25, 2025                                     Respectfully submitted,

                                                                          /s/ Maxwell W. Brooks
                                                                          Maxwell W. Brooks, Esq.
                                                                          *Counsel for Plaintiff*
                                                                          Sulaiman Law Group, Ltd
                                                                          2500 S Highland Ave, Ste. 200
                                                                          Lombard, IL 60148
                                                                          Telephone: (630) 568-5965
                                                                          Fax: (630) 575-8188
                                                                          mbrooks@atlaslawcenter.com